

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA
CIVIL DIVISION

PLAN G   FEE
PAID

In Forma
Pauperis

) Carlos Juenke, Clerk

George A. Teacherson, a Natural Individual

    Plaintiff

versus

United States Patent and Trademark Office,
  an Art. 1, Sec. 8 (Cl. 8) U. S. Government Agency,
C. Cooley, as Examiner,
Harvey C. Hornsby, as Supervisory Patent Examiner
David A. Scherbel,  as Supervisory Patent Examiner
Charles E. Van Horn, as Patent Policy and Projects
  Administrator, Office of Assistant Commissioner
  for Patents
Douglas D. Watts, as Primary Examiner
Richard K. Seidel, as Supervisory Patent Examiner
Stephen Tkacs, as Examiner
Gail O. Hayes, as Supervisory Patent Examiner
Brenda Turner, as Clerk of the Group

    Defendant(s)

CIVIL ACTION No.

# 97 - 8001

## CIV-RYSKAMP

MAGISTRATE JUDGE
VITUNAC

## ORIGINAL COMPLAINT

=========================================================================

## CAUSE OF ACTION

    Plaintiff contends that defendants violated substantive Due Process law by performing actions that did not follow defendants' own Rules and Regulations.  Thus, defendants violated Plaintiff's Constitutional Rights to Due Process of Law as guaranteed by the Fifth Amendment to the United States Constitution.  Defendants contrarily insists [in its original response to Plaintiff's Constructive Legal Notice, see EXHIBIT DJ-1] that patents are purely statutory and that it has the right to do anything it wants as it MAKES the Rules and Regulations.  And, defendants further insists that substantive law consequently does not apply to the United States Patent and Trademark Office.

## CONSTRUCTIVE LEGAL NOTICE

1



Notice was overtly served on and acknowledged by defendants. This was done TWICE! Said Notice included monetary damages resulting from said Rule (Due Process) violations.  Said Notice was served on defendants taken under 37 CFR 1.1(g).at defendants' "Box 8" address which is specifically set aside for receipt of legal papers not connected with active legal cases. Defendants acknowledged receipt of said Notice by returning Post Card Receipts with the date and time of receipt in the Office stamped thereon.  Defendants' violations continued *un*abated thereafter BOTH TIMES.  The first time, defendants answered Plaintiff, the second time resulted in no answer at all.

WHEREAS, written record in the official "File Wrapper" of two of Plaintiff's patent application cases shows repeated Rule violations by defendants' examiners backed up by examiner's supervisors and repeatedly, openly and on written record traversed by Plaintiff,

WHEREAS, defendants repeatedly, wantonly ignored Plaintiff's traverses,

WHEREAS, ignoring of Plaintiff's traverses is a Rule violation in itself,

WHEREAS, defendants did same both serially and concurrently in Plaintiff's experience,

WHEREAS, defendants did nothing to stop the continuing unlawful practice,

WHEREAS, said unlawful defendants' practice has continued unabated since 1991,

## COMPLAINT

George A. Teacherson, a natural individual, sues the above-named defendants, United States Patent and Trademark Office, a U. S. government agency, and the various natural persons severally and individually so above named as co-defendants: examiners and supervisory personnell, employees, who work for the Office, and alleges as follows,

PART 1

## GENERAL ALLEGATIONS

2

1.  Plaintiff brings this civil action in the United States District Court, Southern District of Florida to Redress Grievances under the First Amendment to the United States Constitution. Plaintiff is a Citizen of the State of Florida. Plaintiff's dealings with defendants have been solely through the U. S. Mails in and from the County of Palm Beach in the State of Florida. The Patent Office defendant is a U. S. Government Agency having a mail order operation; consequently damage to Plaintiff occurred in Palm Beach County, State of Florida per all precedent cases involving mail order. Thus, said action comes within the jurisdiction of this court, and is the proper venue to hear same.

2.  Plaintiff, George A. Teacherson, a natural individual, and a Registered Patent Practitioner, comes *in propria persona, Pro Per.* and is otherwise *sui juris.*

3.  Plaintiff hereby charges defendants with failure to follow its own Rules.

4.  Plaintiff will set forth particulars leading to said charge.

5.  Said particulars are found detailed in the Official File Wrappers of U. S. Patent Case Serial No. 07/775,845 continued as 08/065,687 for STORAGE-ENHANCED GLOVE, presently abandoned, and also in the U. S. Patent Case Serial No. 08/052,514 for a Dual-Razor-Blade Honer, presently pending. The instant brief will detail the violations of law committed by defendants which appear on the written record. These appearances are taken from Plaintiff's own records. Should defendants traverse the occurrences herein described and delineated, or challenge the veracity of the citations, said File Wrappers will be subpoenaed for the purview of the Court. The defendants individuals named hereinabove have all signed official Patent Office Actions which violated Plaintiff's substantive Rights of Due Process.

6.  That during the course of prosecution of the two above-identified cases, defendants, United States Patent and Trademark Office, through its defendants employees, also named hereinabove, did make deliberate, willful, unrepentant, unabated, wanton and CONTINUING actions in violation of defendants' own promulgated Rules and Regulations.

7.  That the statuory basis for defendants' Rules and Regulations are found in Title 35 of the United States Code, U.S.C.

3

8. That the enabling Regulations for the statutes are to be found in Part 1 of Title 37 of the Code of Federal Regulations, C.F.R.

9. That even greater detailed procedural Rules are to be found in the defendants' own promulgated Manual of Patent Examining Procedure, M.P.E.P.

10. Plaintiff alleges that the specific Rules and Regulations, which are alleged to be violated, are to be found codified as delineated above.

11. That the Official File Wrappers of both cases, Serial No. 07/775,845 /// 08/065,687 and Serial No. 08/052,514 are expected by Plaintiff to have the full record including dates of said defendants' violations.

12. That defendants will challenge this Action using "Congress has the full power to prescribe to whom and upon what terms and conditions a patent shall issue." *Owen v Heimann*, 12 F. 2d 173, 174 (D.C. Cir.), *cert. den.* 271 US 685 (1926); *Kling v Haring*, 11 F.2d 202, 204-05 (D.C. Cir), *cert. den.* 271 US 671 (1926). (EXHIBIT DJ-1) Thereby, defendants will attempt to "pull the wool" over the Court's eyes in such attempt to direct attention away from the fact that Plaintiff maintains that once Congress and/or its Agency(ies) prescribe such terms, same ALSO APPLY TO SAID AGENCIES as well! Plaintiff maintains that the Agency must also follow the rules it itself promulgated. -- Let all be reminded that "This Constitution...shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Article 6, Clause 2. Defendants are **not** the final authority here. Plaintiff thus brings this case to action based upon the following judicial precedent:

13. U.S. v Capra, 372 F Supp 609 (1974) -- an Agent or Agency which does not follow its own Rules ... violates Citizen's Rights to 5th Amendment Due Process of Law. See also, 501 F 2d 267.

14. U.S. *ex rel* Brookfield Constr. Co. v Stewart, 234 F Supp 94, (1964) "An official who acts in excess of his statutory authority or in violation of the Constitution...ceases to represent the government." Affirmed, 339 F2d 753, 119 ADC 254.

4

15. Any such official that acts without following his or her agency's own Rules then becomes "individually liable to any person injured/damaged by acts under the mistaken belief he was authorized to act." Life & Fire Ins. Co. v Adams, 9 Pet (US) 573, 9 L Ed 234 (ca. 1883).

16. In fact, it is Plaintiff's contention that defendants actually committed acts in violation of the Hobbs Act, "Extortion under Color of Official Right," 18 USC 1951. Said extortion being the demanding of "Appeal Fees" and "Continuation Fees" and the like under the guise or "color" of defendants' Rules and Regulations, when in fact same were continually and willfully being violated by defendants themselves -- causing precious examining time for each case to deliberately be run out by defendants. Thus forcing, defining: extorting, Plaintiff to pay additional monies to seek simple Justice and to continue with the prosecution of his patent cases. Or forcing, defining: extorting, Plaintiff to quit *without* receiving justice. With defendants' own actions running out examining time, defendants then extorted money from Plaintiff/Applicant-for-Patent in order to allow Plaintiff to continue the application prosecution process. Plaintiff's voluntary continuing of said process so to attempt further to gain mere Justice in no way negates defendants' extortion. An act on record is an act on record.

17. Thus, Plaintiff rightfully brings the instant action as defendants' actions make same liable to Plaintiff for damages requested herein.

18. Matter of Archuletta, 432 F. Supp. 583, 599 (1977) "Breach of law [by government agencies] is grave."

19. "As a matter of Constitutional Law" government prosecutors were told "to give better responses to disclose to defendants material evidence that could help them". The court held the government to much higher standards than the government wished. Government's request for "a more lenient burden" was denied. 373 F. Supp. 289, 291, US v Deutch (1974). Plaintiff herein similarly demands that defendants be held to extremely high standards re: following law. Plaintiff hereby demands that any defendants government's request for "a more lenient burden" in following law in the instant case be denied.

20. Paragraph 19 herein is the basic Constitutional Principle of administrative law.

5

21.  Paragraphs 13, 14 and 15 herein shows that defendants' contentions that substantive law does not apply to themselves (EXHIBIT DJ-1) is **in**correct.

22.  Paragraph 21 requires that this Court **so correct the defendants** and simultaneously **recompense the Plaintiff** for damage suffered at defendants' hands.

23.  Of extreme importance to the instant case is Gaballah v. Roudebush, 421 F. Supp. 475, 481.  Substantive: "Due process of law is denied when federal officials violate the Rules and Regulations they administer and deprive a person of protected procedural rights.  The brief elaborates the point that once a federal agency establishes Rules and Regulations, the Fifth Amendment requires that the responsible officials obey them."

24.  In patent law, the (Statutes) Act itself does not give the patent.  Yes, patent law **is** statutory.  But statute alone is NOT authoritative and holds **no** weight; Calif. Bankers Assn. v Shultz, 416 US 21 (1924): "penalties attach only upon violation of Regulations".  Continuing, an "Act...impose(s) no penalties on anyone."  Similarly, patent Statutes grant no Letters Patent. It is the enabling Regulations, the following of which, which gives grant of Letters Patent. Hence, 5th Amendment Due Process is **intimately and substantively tied** to the Regulations and whether or not they are *followed*.  The Office MUST follow its own Rules and Regulations.

25.  Ameron Inc. v U. S. Army Corps of Engineers, 607 F. Supp 962, 970, "...posture of the executive defendants in this case seems to be one designed to avoid a judicial resolution of the lawfulness of the agencies' conduct in continuing to disobey the law.  This court rejects defendants' attempts to insulate their actions from judicial review.  It is 'emphatically the province and duty of the judicial department to say what the law is.'  Marbury v Madison, 5 US (1 Cranch) 137, 177, 2 L. Ed. 60 (1803)."  Since Plaintiff could not make instant defendants follow the law, Plaintiff, through the instant lawsuit, demands the Court do so and simultaneously recompense the Plaintiff as requested hereinbelow.

26.  "Agencies shall take no actions, including the issuance of Regulations, based upon invalid provisions."  Ameron Inc. v U. S. Army Corps of Engineers, 607 F. Supp 962, 970; 787 F 2d 875, 885.  Plaintiff traverses and seeks recompense from the invalid provisions (oral,

6

"understood," or otherwise) that caused defendants to disobey their own Rules and Regulations and willfully deny Plaintiff 5th Amendment Substantive Due Process.

27. "An adverse Comptroller General's ruling does not prevent damages against the United States in the Court of Claims." Greene Cnty Plng Bd. v Fed.Pwr. Comm. 559 F2d 1241. See also Iran Nat'l Arilines Corp. v U.S. 360 F2d 640, 641-2, 175 Ct Cl 504 (1966). Similarly, adverse patent office decisions do not prevent Plaintiff from bringing forth the instant case. Nor does a granted patent relieve defendants of past wrongdoing to Plaintiff. Plaintiff, thus fully has the Constitutional Right to bring forth the instant lawsuit, does so, and demands the Court of correct venue do so rule in favor of the Plaintiff and simultaneously recompense the Plaintiff as requested hereinbelow.

28. Other pertinent law regarding the impropriety of an agency of the United States government failing to follow its own Rules and Regulations are found in: The Circuit Court of the District of Columbia: 455 F2d 1314; 459 F2d 1187; 519 F2d 892; 595 F2d 830; 239 F. Supp. 761; 243 F. Supp. 238; 272 F. Supp. 716; 297 F. Supp. 1297; 317 F. Supp. 686; 318 F. Supp. 1363; 554 F. Supp. 48; 626 F. Supp. 1400; 36 FRD 433. The Court of Claims: 194 CCL 383; 438 F2d 603. Other D. C. cases: 147 ADC 246; 148 ADC 163; 171 ADC 243; 194 ADC 23; 72 Cor 480; 82 CR 930; 75 Geo 164; 37 LCP 74;97 YLJ 1390; 23 ALR F 308. In The U. S. Circuit Courts: 559 F2d 1239; 261 F. Supp. 431; 519 F. Supp. 479; 500 F. Supp. 776; 586 F. Supp. 229; 557 F2d 463; 460 N.W. 620; 63 Geo 145; 426 P2d 1013.

29. Thus, it is seen that a huge volume of case law is extant all of which directs government agencies to follow law. Plaintiff so demands that this Court also do so direct defendants to follow law and simultaneously recompense the Plaintiff for the defendants' past unlawful acts against him.

30. In such situations when government Office Rules are ignored in favor of the Applicants-for-patent going to patent Appeal or filing Continuing new cases, Office personnel are no longer operating in public capacity, but instead are operating in a private capacity! Brookfield Constr. Co.. supra.

. 31. In such situations when Office Rules are *ignored* in favor of the Applicants **paying extra fees** to go to "Appeal" or "Continue" their cases, Office personnel acting privately are *extorting* fees from Plaintiff. The extortion occurs because of the deliberate ignoring of published procedural Rules by defendants which deliberately caused the limited patent prosecution time to be run out by defendants themselves.

32. Final Rejection of an application closes off all remedy of deficiencies and prevents Applicant for a patent from further seeking remedy. Under the Rules as applying to Completeness of examination as opposed to the traversed Piecemeal examination which occurred in both subject cases of the instant Complaint, Part 1, the examiner must address each and every objection and rejection that would so prevent the issuing of a patent in the first action put forth by defendants. Actions of defendants complained of herein specifically violate MPEP 707.07(g). And that violation led to a rejection by defendants of Plaintiff's patent. Said rejections damaged Plaintiff. It caused him wasted hours of time. It caused him wasted years of patent protection. It caused him wasted money. It caused him **severe** mental stress. It caused him continuing *unnecessary* efforts and problems over *years* of time. It caused him to distrust the government. It caused him emotional hurt. Plaintiff/Applicant-for-Patent traverses the damage. Plaintiff/ Applicant demands remedy as hereinbelow requested.

33. To attain desired remedy in fact in both subject patent cases, Applicant was forced [on pain of *forced abandonment* of said cases] to pay *additional* fees to: file Continuation cases because of, or Appeal from, improper examination. Examination was improper due to defendants' violating its own Rules. Contrary to other Applicants who have not had to find remedy from Rule-breaking examinations and did not require extraction of additional fees so to receive simple Justice, instant Applicant has not received Justice *nor* has he received substantive Constitutional *equal treatment under the law*, Article 4, Section 2, Clause 1 and the Ninth Amendment, and thus, he was additionally monetarily damaged through the requirements to either Appeal or Continue his cases so to attempt to receive Constitutional Justice due him. Constitutional Justice should be equally available to all Citizens. Defendants substantively

8

violated Plaintiff's Constitutional Rights by willfully, wantonly and continually without end performing the acts complained of herein in violation of their own Rules. Plaintiff demands the Court provide restitution for all the damage, violations and hurts (as listed *supra.*) defendants caused Plaintiff.

34. Plaintiff contends that defendants examiners and supervisory personnell as listed above violated MPEP 707.07 (f) Answer All Material Traversed. The defendant examiner (Watts) of subject case Serial No. 08/052,514 did not answer anything! Case law was presented to defendant examiner and summarily ignored by same. Defendants Supervisory examiners (Seidel) agreed with defendant examiner. [Supervisory examiner Rinaldi I. Rada, not above named, has the final Response of Plaintiff now and has not yet made a case-completing decision.] The Applicant was and is damaged when the Office does not follow well-settled law.

35. Plaintiff thus demands that this Court make defendants follow the law and simultaneously recompense the Plaintiff for the defendants' past unlawful acts against him.

36. Then, after final rejection damage, when Plaintiff attempted to specifically place case law into the record of subject case Serial No. 08/052,514, an action which should reasonably been expected due to the history of said case, defendant examiner (Watts) howls about "new issues" and "additional searching"! Thus demanding lienient treatment under the law. See paragraph 19, above. Defendants examiner refused to consider the additions put forth by Plaintiff. The Plaintiff/Applicant was and is damaged, as delineated above, by said acts of defendants. Applicant traverses the damage. Applicant demands remedy as herein requested.

37. As a consequence of the defendants' actions delineated in the above paragraph, Applicant has now had to pay out additional fees for an Appeal in the subject case Serial No. 08/052,514 which should not have been necessary if examiner had followed Rules and -- at the very least -- informed Applicant on the telephone during a call to defendants examiner which Plaintiff initiated. Defendants examiner should have indicated that case cites were required in Plaintiff's original answer Plaintiff/Applicant made to defendants' Paper No. 3. Defendants examiner asked if cases were to be provided, Applicant indicated no as he would be arguing

9

well-settled law. Examiner did NOT protest. This gave Applicant reason to expect that well-settled law is known and followed in examinations. Clearly Applicant has been damaged due to the Office not following its own Rules and not following well-settled law. Applicant traverses the damage. Applicant demands remedy as herein requested.

38. Quoting the defendants examiner's words directly in the subject case Serial No. 08/052,514: "It is felt that integrated does not define over the art of record." Paper No. 5, Para. 9. Also, "it is the wording of the claims that presents the problem". The wording was changed from the original, re.: "Amended". Paper No. 5 does NOT recognize that fact. Paper No. 5, paragraphs 3-6 give NO REASONS FOR REJECTION WHATSOEVER! Examiner had assumed that there was no change in any of the claims. The Claims' Amended wording is **ignored**! See MPEP 707.07(d) which requires rejections be expressed so as to be informative! Where's the information in any of the paragraphs? Plaintiff/Applicant amended the claims, he defined terms in a genuine effort to bring the case to issue. Defendants/examiner ignored the word changes, ignored the definitions and rejected out of hand. Defendants examiner ignored EVERYTHING INCLUDING THE DRAWING CHANGES! It is truly difficult to miss drawing changes made in red ink. See EXHIBIT A. Yet, Paper No. 5, para. 8 regurgitates its equivalent (demanding changes in the drawing) from Paper No. 3. No thought. No actual reconsideration. Just, get to the final disposition and get it off the examiner's desk. Never mind the "Rules." See paragraph 34, above.

39. The subject case Serial No. 08/052,514 actions of paragraph 38 represents a substantive Due Process violation. This definitely evidences that the claims did not get considered in light of the disclosure. As will be seen below, the preceeding clause "considered in light of the disclosure" is basic to all examining of patent applications in ALL cases within defendants' purview. Applicant traverses this total miscarriage of justice. Applicant demands remedy therefor. Said remedy is set forth hereinbelow.

40. Plaintiff charges that 37 CFR 1.105 has been violated by Office personnel, defendants. The drawing and Claims 7 and 14 were dealt with in Plaintiff's/Applicant's original

10

response in the subject case Serial No. 08/052,514, page 2, plus red-ink drawings. The drawing

change was entered in the record by defendants as were Plaintiff's amendments. Defendants'

Paper No. 5's, para. 8 is a Regulation 105 violation. The violation being that examiner did **not**

consider applicant's drawing change entered into the previous response. And therefore did NOT

do a complete job of examination and reconsideration: 37 CFR 105, 112. The changes in

question were: Adding ring link segment 100 as shown in red through a hole. EXHIBIT A. And

adding potential repaired and renewed-by-cutting new honing surfaces 90 and 91 as shown in

phantom, also in red in EXHIBIT A. The Office ignored well-settled law and issued the flawed

Action, Paper No. 5 which mirrors the original Action, Paper No. 3, so closely as to appear to

violate 37 CFR 104(a), "Making a Thorough Study". At the very least, the new surfaces 90, 91

should have been specifically addressed. Exactly what kind of a "Thorough Study" does not

catch that an amendment to the drawing has been entered? How is this explained? Or

excused? How does any "Thorough Study" not understand and/or not catch that the word

"integrated" has been defined by the applicant in his Amendment (Paper No. 4) to have a certain

meaning which relates specifically to the disclosure for the instant case? Applicant has the right

to so define words under the Rules and Regulations of the Defendants. In refusing to allow

same, defendants violated Plaintiff's Rights of Due Process. "Words which were defined in the

specification must be given the same meaning when used in a claim," Baker Oil Tools, Inc. v

TRW, Inc. (ND Okla.) 673 F Supp 1061, 3 USPQ 2d 1691, 1695. The entered drawing,

EXHIBIT A, also *clearly defines the meaning* of the word "integrated." In fact, the drawing is

unmistakable. Defendants examiner simply REFUSED to follow the Rules.   And that violation

led to a rejection by defendants of Plaintiff's patent. This rejection obviously damages Plaintiff.

As well as causes the other damage listed hereinabove. Plaintiff is then forced to put out

additional fees to defendants (conveniently those fees go to defendants) so to Continue or

Appeal his case. Otherwise, he must simply accept the Rule violations and allow himself to be

damaged without a whimper. Upon Appeal, defendants contended (in the paper entitled:

"EXAMINER'S ANSWER") that the instant violations are not appealable! Defendants provide

11

NO WAY to receive Constitutional First Amendment Redress of Grievances!  In itself, ANOTHER violation of Plaintiff's Constitutional Rights.  Plaintiff/Applicant traverses the damage caused by the refusal outlined in the instant paragraph.  See paragraph 32, above.  Plaintiff/Applicant demands remedy as set forth below.

41.  Plaintiff charges that 37 CFR 1. 106 (b) has been violated by defendants Office personnel.  Applicant quotes 37 CFR 1.106(b) pertaining to rejections on complex art.  Note that the instant invention and disclosure is simple, but examiner insists on making complex issues of it: Regulation 106(b): "...the particular part relied on must be designated ... The pertinence ... be clearly explained ..."  Paper No. 5 violates Regulation 106(b).  A non-appealable matter, per defendant -- contended after appeal was taken.  In merely throwing up the same complaints as found in Paper No. 3 without change, even to the point where applicant's entered drawing changes are not considered, and without further explanation of examiner's position, Paper No. 5 violates Regulation 106(b).   And that violation led to a rejection by defendants of Plaintiff's patent.  This rejection obviously damages Plaintiff.  Plaintiff/Applicant traverses the damage caused by this refusal.   See paragraph 32, above.  Plaintiff/Applicant demands this Court grant remedy as set forth below.

42.  Plaintiff answered Paper No. 3 of the subject case Serial No. 08/052,514 under the impression that well-settled law is sacrosanct and always followed by the defendants as a U. S. Government Agency.  Applicant's telephone conversation with defendants examiner brought to light no indication that defendants examiner does not know well-settled law, nor any indication that defendants examiner does not care about well-settled law, nor even the slightest hint from said defendants examiner that Applicant would be required to actually present precedent cases involving already well-settled law in order to even get *mere consideration* of his Amendments.  The disclosure actually discloses a single-part device.  From the original specification as originally filed:  see Claim 1, line 5 reading on the specification's  Page 1, line 2, Page 2, lines 13, 26, Page 4, line 3(especially), line 7, 19.  The Court should not overlook the drawing, EXHIBIT A.  Is there anything clearer than the instant drawing?  Yet defendants examiner
12

absolutely, wantonly, resolutely *refused* to consider a single-part invention. Defendants examiner insisted that "integrated" did not define single-piece! Plaintiff/ Applicant traverses the damage caused by this refusal. See paragraph 32, above. Plaintiff/Applicant demands remedy.

43. The Patent Appeals Board regularly uses the originally filed and entered specification of an Application for Patent to define terms when it hears cases brought before it. Hence, by the defendants' own Rules, the subject disclosure actually does disclose a single-piece device. Plaintiff/Applicant strongly traverses any other holding and rejection arising therefrom. Claims actually did **not** get examined in the light of the disclosure. The disclosure was ignored by the defendants examiner. Drawing changes were entered. The defendants examiner did not see them. Words were defined. The defendants examiner did not acknowledge the definition. Amendments were entered. The defendants examiner shows no evidence of knowing it; and certainly did not acknowledge it. Well-established law was relied upon as authority. The defendants examiner **never even responded** to any statement about well-established law. There is only one conclusion. The Amendment entered in response to defendants' first Office Action was summarily ignored in its entirety(!) by the defendants examiner. Plaintiff strongly traverses this miscarriage of justice. Plaintiff has been damaged. See paragraph 32, above. Plaintiff demands remedy as set forth below.

44. Plaintiff/Applicant charges defendants examiner with refusing to follow well-settled law --including that self-same law that the Patent Board of Appeals uses in EVERY SINGLE CASE it hears! This constitutes a substantive violation of Due Process against Plaintiff/ Applicant. Plaintiff strongly traverses this miscarriage of justice. Plaintiff has been damaged. Plaintiff demands remedy as set forth below.

45. If the Applicant for a patent cannot define the issues, and the Office and its personnel force definitions upon Applicants, then very clearly, the Office will NOT be examining Applicants' inventions, but rather will instead be examining examiner's inventions. Therefore, instant Plaintiff/Applicant traverses "made-up" "issues" placed into the case as camouflage so to enable easier rejection instead of following MPEP 707.02 (a), 707.07, 707.07 (d) and (g).

13

Plaintiff/ Applicant traverses all situations including the instant one, where examiners do NOT examine Applicants' inventions but rather choose to "examine" their own defined version of the inventions presented for consideration. M.P.E.P.: 2173.01 "Applicants are their own lexicographers..."; and Rexnord, Inc. v Laitram Corp. (ED Wis) 6 USPQ2d 1817, 1829. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

46. Furthermore, to establish even a *prima facie* case for obviousness, the defendants' own Manual of Patent Examining Procedure, M.P.E.P. page 2100-109, first col., mid para. demands: "without explaining any one rejection with reasonable specificity was reversed as procedurally failing to establish a *prima facie* case of obviousness." Such specific explanations must address: **M.P.E.P. 2143, page 2100-109. To establish obviousness: First, some suggestion or motivation, Second, reasonable expectation of success, Finally, must teach or suggest *all* the claim limitations.** And it ends the column with: **The teaching and the reasonable expectation of success must both be found in the prior art, *not* in applicant's disclosure. *In re Vaeck.*** Until and unless defendants examiner can find references which either actually suggest or show some specific motivation to change their structure into the instant subject structure, the instant claims mightily distinguish over all prior art and all instant claims are allowable. If defendants examiner does not or cannot point out the **motivation** of the prior art to design the instant structure, then the U. S. Supreme Court's Deere Test is not met and the instant invention patentably distinguishes over the prior art. [Graham v. John Deere, 383 US 1, 148 USPQ 459 (1966).] Any and all objections that examiner may have must be accompanied with specific and concrete REASONS, and "examiner must provide evidence" according to M.P.E.P. 2144.03, page 2100-115, mid, second column. The subject defendants examiner did not do so. And that violation led to a rejection by defendants of Plaintiff's patent. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

47. Defendants examiner attempted to draw attention away from the law by citing "File Wrapper Estoppel" in his answers to the Patent Board of Appeals, entitled: "Examiner's Answer", as if he accomplished something by dragging the instant patent case out beyond any reasonable

14

length of time for such a simple subject device.  The supposed "Estoppel" examiner quotes is nothing more than "single-piece" which is **in the specification as originally filed.  It is also precisely shown in the drawing!  EXHIBIT A.**  A PROPER examination would have understood that single-piece is, has always been, and will continue to be **lack** of connected multiple pieces, or parts, of a device.  "A prior art patent or publication is not an anticipation unless identical to the patented invention."  Nelson Planning Ltd. v Tex-O-Graph Corp., D.C. NY 1968, 280 F Supp 226, affirmed 423 F 2d 36.  See also, Amphenol Corp v. General Time Corp., D.C. Ill 1967, 275 F Supp 903, affirmed 397 F 2d 431.  Now, the claims are read in light of the disclosure, thus: MPEP 1206 (3), last sentence, which is standard procedure for Patent Appeals.  Quoting Rexnord, Inc. v Laitram Corp. (ED Wis) 6 USPQ2d 1817, 1829 we find that "Where the specification indicates that the term 'integrally formed' refers to a structure which is formed in one piece, the court will so interpret the claims."  So why will the defendants **not** follow well-settled law?  Defendants remain silent.  Why-so-ever, Plaintiff has definitely been damaged thereby, as explained and delineated in para. 32 above.  Plaintiff demands remedy as set forth below.

48.  Another violation by defendant examiner, re: "integral":  M.P.E.P. 2144.04 (e) MAKING INTEGRAL: "prior art perceived a need for mechanisms to hold their honers in place, whereas the inventor eliminated the need for separate holding structure, showing insight that was contrary to the understandings and expectations of the art." --- In so violating the quoted (and paraphrased) official procedure, defendants' violated Plaintiff's Rights to Due Process.  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

49.  M.P.E.P. 2144.04 (b)  *Elimination of a step or an element and **THE RETAINING OF** its function* **IS AN INDICIA OF _UN_OBVIOUSNESS.**  Quite clearly the instant and subject invention eliminates quite a bit of prior art structure YET IT **STILL DOES RETAIN** ITS FUNCTION OF MAKING THE HONER CAPABLE OF BEING HELD BY A USER.  The Rules say that the instant invention distinguishes over the prior art and should be allowed.  In so violating the quoted official procedure, defendants' violated Plaintiff's Rights to Due Process.  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

15

50.  If defendants examiner attempts to explain rejecting upon his mere whims as being "common knowledge" or "well known"  Plaintiff/Applicant directs all attention to M.P.E.P. 2144.03, page 2100-113, Second col., lower middle:  **EXAMINER MUST PROVIDE EVIDENCE OR EXPLAIN WHY NO EVIDENCE IS REQUIRED. "examiner must provide a convincing line of reasoning."**  In the face of an Official File Wrapper FULL of traverses over the prior art teaching **away** from the teachings of the subject invention, defendants examiner has refused deliberately to follow this Rule.  There exists **no** evidence extant in the subject case that would make the instant novel honing mechanism obvious to anyone skilled in the art.  Defendants examiner never placed any such evidence in the case.  There is nothing in the written record to provide such evidence.  In so violating the quoted procedure, defendants violated Plaintiff's Rights to Due Process.  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

51.  Finally, and of most importance, M.P.E.P. 2144 itself demands on page 2100-114, First col., middle, that "obviousness cannot be established without also providing evidence of the motivating force which would impel one skilled in the art to do what the patent applicant has done."  Since defendants examiner never followed this *Ex parte Levengood* rule either, defendants examiner's rejections have no merit.  **\*\*What would be the prior art's rationale to dispense with all their structure?\*\***  Defendants examiner never gave a reason and thus examined improperly.  According to defendants own Rules, defendants examiner never ever established a basic *prima facie case* for obviousness in the entire course of the subject case.  In so violating the quoted, published procedure, defendants rejected Plaintiff's application for patent and thus improperly violated Plaintiff's Rights to Due Process.  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

52.  Plaintiff/Applicant now quotes his response to Paper No. 5: "Applicant clearly and plainly gave "integrated" its meaning as a single-piece unit --- not an arrangement of parts forming a single unit, nor a multiple part unit.  That was Applicant's definition.  Applicant had the right to make it and examiner has the duty to use applicant's definition to define his invention."

16

In total disregard and thorough violation of M.P.E.P. 2144.03, defendants examiner IGNORED
this statement!  It is a Due Process violation against Plaintiff when defendants' Office staff don't
follow Office Rules (US v Capra, *supra.*).  Plaintiff has been damaged thereby.  Plaintiff demands
remedy as set forth below.

     53.  The defendants' perverse contention in case Serial No. 08/052,514 that "the hone of
[inventor] Welch is integral by applicant's definition" put forth by defendants examiner
<u>deliberately</u> *ignores* Applicant's REAL definition that the instant invention is a **HANDLE** <u>*AND*</u>
*HONE* <u>integrated into a uniform single piece.</u>  Once again, the defendants examiner is making up
his own invention and rejecting himself!  *Proper* examining procedure requires that the
examination be based upon the *applied for invention* and nothing else.  According to defendants
own Rules, defendants examiner never ever established a basic *prima facie case* for
obviousness in the entire course of the subject case.  It is a Due Process violation against
Plaintiff when defendants' Office staff don't follow Office Rules (US v Capra, *supra.*).  Plaintiff
has been damaged thereby.  Plaintiff demands remedy as set forth below.

     54.  Plaintiff contends on the record: "Please note that Applicant's invention is an integral
combination of Strop and Handle/Holder manufactured in one piece."  **The word "uniform" in
the Claim 1 designates one, individual part that has no other connections such as a separately
manufactured handle would require.**  Now defendants' Rules precisely say that this and the
prior art which ALWAYS shows multiple parts and numerous part connections, are different.  Yet
defendants examiner flatly refused to follow the Rules.  Here is an exact quote of defendants'
found on page 7 of the Action entitled "Examiner's Answer" which says: "Please note that
Welch's strop is the glass plate not the blade holder."  This is clear and precise evidence that
defendants KNEW that the prior art had an individual part which was a strop and **other parts**
which were holders.  The Rules say that these two devices are NOT the same (not analogues)
and that the single-piece device distinguishes over the non-analogous multiple-piece prior art
and is deserving of a patent.  It is a Due Process violation against Plaintiff when defendants'

Office staff don't follow Office Rules (US v Capra, *supra.*). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

55. Examiner's position is arbitrary and capricious. The cited art is not drawn to the invention or its analogues, Gypsum Co. v Dale Ind. Inc., D. C., Mich., 1966, 260 F Supp 78. 35 USC 102 rejections were made in the subject case against a single-piece device using multiple-piece devices! NONE of the prior art shows the instant feature. The prior art teaches that handles MUST be separate pieces from the honer. Neither do they show motivation to modify into the instant structure. The instant structure is plainly NOT SHOWN in the prior art much less being inherent in it. Hence, it is patentably significant. "A rejection of claims under Sec. 102 must fail absent a showing of some reasonable certainty of inherency in the cited art." Appl. of Brink, 57 CCPA 861, 419 F2d 914, 164 USPQ 247(1970). Defendants never showed evidence of any inherency at all. NONE of the art cited in Case Serial No. 08/052,514 has ever shown the disclosed subject structure sought to be patented. Under the requirements of MPEP 707.07 (f) Answer All Material Traversed, Plaintiff made demand to so show. Plaintiff's demands were ignored by defendants. And that Rules violation led to a rejection by defendants of Plaintiff's patent. It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra.*). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

56. Citing M.P.E.P. page 2100-101, BASIC CONSIDERATIONS WHICH APPLY TO OBVIOUSNESS REJECTIONS. 1) INVENTION CONSIDERED AS A WHOLE. The instant invention is single piece, monolithic combination of handle and honing means. 2) REFS. CONSIDERED AS A WHOLE AND **MUST SUGGEST THE COMBINATION.** The File Wrapper shows Applicant's quoting in Case Serial No. 08/052,514 of cited prior art itself crowing about being only two-piece and thus "efficient." Prior art clearly teaches away from the instant teaching. 3) IMPERMISSIBLE HINDSIGHT VISION. Defendants/examiner simply does not like the instant teaching and is clearly using opinion and hindsight to say that the instant combined structure is "obvious" because other art have flat pieces within their complicated structures. This

18

is clearly incorrect and *ignores* the **prior art teachings that handles MUST be separate** pieces from the honing mechanism that they are attached thereto.  4)  REASONABLE EXPECTATION OF SUCCESS.  The **prior art could not conceive** of any kind of success in combining the two main elements, honer and handle, to form a single-piece, "monolithic" device.  In spite of these clear and precise promulgated instructions by defendants, said defendants STILL refused to follow their own Rules in handling the instant case.  It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra.*).  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

57.  Plaintiff/Applicant traverses defendants'/examiner's response as not establishing a *prima facie* case.  Defendants'/examiner's first action, Paper No. 3 in Case Serial No. 08/052,514, was pure whim and was easily answered by pointing out the differences between multiple and single piece art along with a reference to law and the Rules.  Defendants'/examiner's first action violated M.P.E.P. page 2100-109, first col., mid para.: "without explaining any one rejection with reasonable specificity was reversed as procedurally failing to establish a *prima facie* case of obviousness."  According to defendants own Rules, defendants examiner never ever established a basic *prima facie* case for obviousness during the entire course of the subject case.  It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra.*).  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

58.  Plaintiff's answer to said Paper No. 3 was made after *conference with examiner who verbally acknowledged the Rules but gave no indication that same would have to be intimately re-taught to the Office personnel.*  This misdirection by defendants caused Plaintiff to answer initially by merely stating law without intimately citing any of it in a simple reliance on the Rules.  It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra.*).  Plaintiff has been damaged thereby.  Plaintiff demands remedy as set forth below.

59. Now to quote examiner's unabashed and Rules-improper **hindsight** directly, found on page 5 of the Action entitled "EXAMINER'S ANSWER" (to Plaintiff's Appeal) in Case Serial No. 08/052,514, : "Conrad needs relative stiff ends. This could easily and cheaply be achieved by simply thickening the ends or treating the ends with an appropriate stiffener. Both alternatives would appear to be quicker and easier than adding metal plates." This is such a direct violation of the Rules, one is left wondering if he kidding? Where does the PRIOR ART say this? Suggest this? Is motivated to do this? Thickening the ends of a monolithic honer/handle means is reserved solely for the instant claimed device - and no other! The prior art patent to inventor Conrad adds extra parts to give it "stiff ends." But only Plaintiff's device has the right to "thicken" the ends of a single piece honer. The reason is found in **M.P.E.P. 2143, page 2100-109**, *supra*. **Defendants examiner clearly violated this rule. Again!** And that violation led to a rejection by defendants of Plaintiff's patent. Plaintiff has been damaged thereby. It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff demands remedy as set forth below.

60. Again, well-settled law, including the procedures of Patent Appeal, find "the claims are read in light of the disclosure." The disclosure in Case Serial No. 08/052,514, discloses a single-piece device. Hence, the claims are read as claiming a single-piece device. Consequently, THERE **CANNOT BE** *ANY* mistaking that the wording of the claims as entered originally, **BY FOLLOWING WELL-SETTLED LAW,** apply to AND ONLY TO single-piece, monolithic devices -- ***ONLY.*** To say that they might allude to a flat piece or a specific material found inside extraordinarily multiple-count pieces devices **deliberately and foully IGNORES** *well-settled law. And it does this without any specific reasoning or evidence.* ***Compounding the Rule violations***. Mere examiner OPINION that it reads on non -monolithic art does NOT count! Use of same ADDS again to the counts of rule violations committed by defendants. And those violations led to a rejection by defendants of Plaintiff's patent. It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

20

61. Examiner's opinion that one could take parts of existing patents, strip them of their structure to magically wind up with the instant honer or get the instant single-piece device mixed up with the complicated structure extant when the existing inventions and their inventors themselves couldn't do the same violates M.P.E.P. 2144.03. And that violation led to a rejection by defendants of Plaintiff's patent. It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

62. There is not and there never was any unclear and indefinite allusions to multiple-piece art in the subject patent case. Non-mololitihic art cannot read on monolithic art. Such are non-analogous devices, M.P.E.P. 2141.01(a). Again, defendants violate their own Rules. There exists **no evidence** extant that would make the instant novel honing mechanism claims read like they were multiple-piece to anyone in the art. It was only defendants' improper Rules-defying OPINION that refused to see the distinguishing difference in the invention of Case Serial No. 08/052,514 and the prior art. And those violations led to a rejection by defendants of Plaintiff's patent. It is a Due Process violation against Plaintiff/Applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

63. Plaintiff/Applicant now quotes his response to Paper No. 5 of Case Serial No. 08/052,514: "Applicant clearly and plainly gave 'integrated' its meaning as a single-piece unit - not an arrangement of parts forming a single unit, nor a multiple part unit. That was Applicant's definition. Applicant had the right to make it and examiner has the duty to use applicant's definition to define his invention." In total disregard and thorough violation of M.P.E.P. 2144.03, examiner IGNORED this statement! And that violation led to another count of rejection by defendants of Plaintiff's patent. It is a Due Process violation against applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

64. Further quoting Applicant/Plaintiff's response to Paper No. 5 of Case Serial No. 08/052,514: "First, it is extremely important to place on record that examiner never objected to either the specification or the drawing as being indefinite. The entire office action Paper No. 3 is directed solely to the claims with specification and drawing changes due solely to claim wording. Therefore, applicant has no choice but to assume that he properly, clearly and definitely made his specification [precise] to the satisfaction of examiner. And that the specification is clear and fully describes the invention. Any second thoughts or change in this status which may result in a final rejection would be bitterly traversed as unfair and without justice." What kind of a "Thorough Study" does not address the specification changes of an amendment? At the very least a statement officially accepting the changes should be given. And that violation of not making a throrough study led to a rejection by defendants of Plaintiff's patent. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

65. Again Plaintiff/Applicant points out that a single-piece invention can NOT be anticipated under 35 USCA 102 by multiple piece inventions per Note 142: "There is no anticipation constituting lack of novelty where modification is necessary to prior art in order to accomplish the function of the patent in question." Metal Arts Co. v Fuller Co., C.A. Tex 1068, 389 F 2d 319. Clearly **all** prior art so far listed by defendants must be so modified. Yet, defendants examiner shows no caring whatsoever about the Statute and rejects Plaintiff's application based solely upon defendants' own OPINION that it does not deserve patenting. This violates the statutes and Plaintiff's substantive Rights to Due Process leading to patent protection. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

66. In Plaintiff's "PETITION FROM PREMATURE FINAL REJECTION" Plaintiff once again clearly, precisely and concisely told defendants the violations they were committing: "The instant invention is drawn to a single-part device. It has always been drawn to a single-part device. Rejections were based on multiple-part devices. These are non-analogous art and hence cannot be used to reject: US Gypsum Co. v Dale Ind. Inc., D,C, Mich, 1966, 260 F Supp 78. Further evidence of non-analogous art is Clarke, [it is] a blade NOT a honer! The rejections

22

were improper from the beginning." This, of course failed to vacate the improper rejection of the case, causing Plaintiff damage by forcing him to pay "Appeal Fees" upon pain of forced abandonment of the subject case. So to attempt to get simple Justice, Plaintiff was forced to pay. While others received simple Justice without extra expenditures. This situation is unequal treatment under the law. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

67. The refusal to enter the amendment after final rejection cited "new matter" as its purported reasons. This was also an attempt for "a more lenient burden" by the government/ defendants which should have been denied under 373 F. Supp. 291, see para. 19, *supra*. Plaintiff rejected this theory by the following exact wording to defendants: "IMPOSSIBLE! If for some reason, on an application specifically citing a one-piece, single part device from its very second line on its very first page, and further showing same in a clear and complete drawing, no one-piece art examination was performed, the supposed examination was neither "thorough" nor "complete". This represents a 37 CFR 1.104(a) and also a 37 CFR 105 Office Rule violation. Multiple Rule violations! Any Action in which the Office violates its own Rules and Regulations, should not be allowed to stand." Defendants did not answer Plaintiff. Defendants rejected Plaintiff's patent therebecause. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

68. Plaintiff/Applicant's Paper No 4 talked about the single part invention very clearly, yet examiner's Paper No 5 ignores the individual part defense, violating Regulation 105 "The examiner's action will be complete as to all matters..." And that violation led to a rejection by defendants of Plaintiff's patent. It is a Due Process violation against applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

68. Defendants rejected and damaged Plaintiff ostensibly on the word "integrated". Per Plaintiff's Patent Appeal Brief : "Claim 1: The word "integral" is defined in Claim 1, lines 4 and 5 to mean "a single unit". This definition is repeated in line 6 which refers to the invention as

23

an "integral unit". This is shown as part 20 in the drawing. Exhibit A. Note that part 20 does not have any additional members, attachments, connections or secondary parts of any kind. It stands alone as a single piece part. The word integral was amended to read as the word "integrated" -- which examiner accepted as finding support in the specification. And in the specification, the idea of single piece is repeated over and over again starting on page 1, line 2 and defining it as "integral" in page 2, lines 12-14 and again in page 2, lines 25, 26, and again in page 4, lines 1,2,7." See paragraphs 47, 48, *supra*. Ex parte Kumagai (Bd Pat App & Int) 9 USPQ2d 1642, 1648: "Indiscriminate reliance should not be placed on layman's definitions found in dictionaries; rather, one should look to the pertinent technology." As well as MPEP 1206(3). By refusing to use or even acknowledge Plaintiff's definitions, defendants violated court-tested law and their own Rules. And those violations led to a rejection by defendants of Plaintiff's patent. It is a Due Process violation against applicant when defendants' Office staff don't follow Office Rules (US v Capra, *supra*.). Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

69. Paper No. 5, paragraphs 3-6 of the U. S. Patent Case Serial No. 08/052,514 give NO REASONS FOR REJECTION WHATSOEVER! Defendants/examiner in his response to Plaintiff/Applicant's amendment has assumed that there was no change in any of the claims. The Claims Amended wording is ignored! See MPEP 707.07(d) which requires rejections be expressed so as to be informative! Where's the information in any of the paragraphs? Applicant amended the claims, defined terms in a genuine effort to bring the case to issue. Examiner ignored the word changes, ignored the definitions and rejected out of hand. Examiner ignored EVERYTHING INCLUDING THE DRAWING CHANGES! It is truly difficult to miss drawing changes in red ink. See, EXHIBIT A. Yet, Paper No. 5, para. 8 regurgitates its equivalent from Paper No. 3 - that the drawing should be changed! These actions are clear. They violate the Rules and the Regulations. They are directly responsible for the rejection of Plaintiff's case. Plaintiff has been damaged thereby. Plaintiff demands remedy as set forth below.

70. Drawing changes were entered. EXHIBIT A. The defendants examiner did not see them. Words were defined. The defendants examiner did not acknowledge the difference. Amendments were entered. Defendants examiner shows no evidence of knowing it. Well-established law was relied upon as authority. Defendants examiner never even responded to any statement about well-established law. There is only one conclusion. The disclosure/amendment was ignored by the defendants examiner. Plaintiff/Applicant strongly traverses this miscarriage of Justice. It damaged Plaintiff/Applicant. Plaintiff/Applicant demands remedy as set forth below .

71. Plaintiff/Applicant contends that examiner also violated MPEP 707.07 (f) Answer All Material Traversed. He did not answer anything! Should defendants claim differently, same are directed to give page and line numbers and clear, fully detailed explanation of when, where and how defendants examiner in Case Serial No. 08/052,514 did so respond and how any such response follows law. The mere fact that Plaintiff/Applicant cannot locate any such responses shows without ambiguity that examiner violated MPEP 707.07 Clarity. Defendants examiner actually did not do a re-examination. AT ALL! Plaintiff/Applicant traverses this miscarriage of Justice. It damaged Plaintiff/Applicant. Plaintiff/Applicant demands remedy as set forth below.

72. Plaintiff/Applicant entered red ink drawing corrections and sent same with the amendment in response to Paper No. 3 and in the same envelope. EXHIBIT A. Same was entered and accepted by the Office. Hence, the drawings were officially corrected in the case. That examiner did NOT know this, points DIRECTLY at the FACT that the instant case was NEVER re-examined. Applicant quite strongly traverses this miscarriage of Justice. Even though an amendment was placed into the case file wrapper, examiner did not even acknowledge its existence! The drawings were not re-examined, the case itself was not re-examined in violation of 35 USC 132. Defendants' Paper No. 5, para. 8 does indeed attest to the fact that the drawings were not re-examined. There is no getting around this paragraph from the Office Action. It evidences lack of knowledge on part of defendants/examiner re: the entered Amendment. This is a Due Process violation. It is clear. It is obvious. And it can't be retracted.

25

It resulted in total rejection of Plaintiff's patent case. It damaged Plaintiff. Plaintiff demands remedy as set forth below.

73. The advisory action of Case Serial No. 08/052,514 states that Claims 21 and 22 present new issues requiring "further consideration and/or search"! Since there is only one issue in the entire case: single-piece -- and since this single issue seems to "require further consideration and/or search," it is patently obvious that an incomplete, non-thorough search and examination was performed in the initial action in a *multiple* violation of USC, CFR and MPEP procedures. Plaintiff/Applicant quite strongly traverses this miscarriage of Justice. It damaged Plaintiff. Plaintiff demands remedy as set forth below.

74. MPEP 707.02 (a) "shortest path to final disposition of an application is by finding the best references on the first search and carefully applying them." Contrarily to this direction, the instant case, a case about single-piece honers, was so poorly handled that when Applicant entered an Amendment that should have reasonably been expected about a single-part honer, examiner says that he must do FURTHER research and that a NEW ISSUE arose from the Amendment! Applicant traverses sloppy handling of the instant case. PROOF of sloppy handling comes from the prior art: The issued patents of inventors Welch and Fletcher which were placed into the patent case File Wrapper as evidence against Plaintiff/Applicant-for-Patent, claim essentially the *same* thing. The instant defendants examiner himself also examined Fletcher and missed Welch as prior art to Fletcher! Very sloppy indeed. This situation gives evidence that the instant examiner does not know about the Doctrine of Equivalents. Which is another aspect of well-settled law. Plaintiff has definitely been damaged by defendants' actions. Plaintiff demands remedy as set forth below.

75. Now turning to the File Wrapper record for U. S. Patent Case Serial No. 07/775,845 continued as 08/065,687 for STORAGE-ENHANCED GLOVE. This case was filed first and then was dragged out so long by defendants that it ran concurrently with the other subject case of this action. Here, defendant examiner's (Cooley) unlawful actions were traversed to Supervisory personnell (Hornsby and Scherbel) and even on up to the Patent Policy and Projects

26

Administrator of the entire defendant government office (Van Horn). All insisted that defendants were following their own rules. That they insisted so was even though defendants' actions in the instant subject case did NOT ALLOW the subject case examination to =>cover the subject matter which *Plaintiff* considered to be his invention! Thus, upon Plaintiff's final entered response to a long line of problematical entreaties of the other subject case, it is now time to file the instant lawsuit. The case is fully ripe!

76. Defendants examiner, as well as the Assistant Commissioner, and the Supervisory Patent examiners for U. S. Patent Case Serial No. 07/775,845 continued as 08/065,687 are here also held to be in Contempt of Appl. of O'Keefe, 1953, 202 F.2d 767, 40 CCPA, Patents 879 and Int'l. Std. Elec. Corp. v Kingsland, C.A. 1948, 169 F.2d 890, 83 D.S. App. D.C. 355 for failure to clearly state reasons and being non-specific -- particularly in a demand using the word "all" which meant absolutely nothing to Plaintiff thereby making response improbable; and a demand to provide "red ink sketches" of canceled figures of the drawing. There also are Hobbs Act violations extant regarding an unnecessary File Wrapper Continuation (FWC) and its related, required fees, 18 U.S.C. 1951: Extortion under Color of Official Right. Here is another generally SIMPLE case that the defendants *extraordinarily* complicated out of all proportion to the simplicity of the invention. Please be fully aware that the record shows that a complete, seemingly neverending prolix obfuscation by the examiner was later in the case cleared up with one, highly simple statement by defendants that could have saved much time and money on both sides if defendants examiner had deigned to provide it in the beginning! This is a violation of MPEP 707 Clarity. It damaged Plaintiff by dragging out the case requiring additional monetary expenditures by Plaintiff and laying huge mental stresses upon Plaintiff as defendants made it absolutely *impossible* to answer their incorrect demands. The other damages listed above in para. 32 apply here as well. Plaintiff demands remedy as set forth below.

77. The examiner and the Supervisory Patent examiners, as well as the Assistant Commissioner, are in Contempt of Appl. of O'Keefe, 1953, 202 F.2d 767, 40 CCPA, Patents 879 and Int'l. Std. Elec. Corp. v Kingsland, C.A. 1948, 169 F.2d 890, 83 D.S. App. D.C. 355 for failure

27

to clearly state reasons and being non-specific -- particularly in a demand using the word "all" which meant absolutely nothing to Plaintiff thereby making response improbable. Defendants deliberately did NOT EXPLAIN with any Clarity at all, MPEP 707 violation. Even though Plaintiff/Applicant *demanded* explanation *many times* in the file record, defendants continued to violate their own Rules. These multiple Rule violations serially damaged Plaintiff by dragging out the subject case requiring additional monetary expenditures by Plaintiff and all the other damages listed hereinabove for the other subject case. They damaged Plaintiff. Plaintiff demands remedy as set forth below.

78. The continuing demand by defendants in case Serial No. 07/775,845 which was continued as Serial No. 08/065,687 to provide "red ink sketches" of canceled figures of the drawing attempted to use a Rule against Plaintiff/Applicant. Since a canceled figure does NOT EXIST, how does one enter red ink drawings about a subject that does not exist? Understand that the red ink Rule is supposed to make NEW ADDED material to the drawing that did **not** originally appear thereupon plain to the Office staff. So by definition, there cannot BE red ink drawings for non-existent material. Defendant examiner had a continuing chuckle over this one and never explained himself. Yet, valuable and limited examining time was wasted over this non-existent requirement. Said waste allowed defendants to *ignore* Plaintiff's/Applicant's entered claims, thus making "a more leinient burden" for defendants, See para. 19, *supra*. The wasted time resulted in further and unnecessary fees expenditure for Plaintiff so to "Continue" the case. No explanations, no evidence equals multiple Office Rule violations by defendants, *supra*. These violations caused rejection of Plaintiff's application and also willfully, deliberately dragged out the case requiring additional monetary expenditures by Plaintiff. It damaged Plaintiff as set forth, *supra*. Plaintiff demands remedy as set forth below.

79. 35 USC 112, para. 2 invokes "subject matter which the applicant regards as his invention." The instant case Serial No. 07/775,845 /// 08/065,687 is replete with statements by Plaintiff/ Applicants stating that a **combination** of the four sets of various figures of the drawing is 'what we regard as our invention.' Yet, defendant examiner absolutely ***refused*** to consider the

28

*combination*. Examiner INSTEAD threw OUT *every* combination by demanding "restriction" to one "species" of examiner's *own personal choice* of four different "species". Examiner in no way ever considered nor allowed himself to want to consider the **true scope** of Applicants' invention. Therefore, in Contempt of Nasco, Inc. v Vision-Wrap, Inc., C.A.III, 1965, 352 F.2d 905: "Combination claims must be considered as a whole.", and Stromberg Motor Devices Co. v Zenith Carburetor Co., CCA III. 1965, 254 F. 68, cert. den. 39 S. Ct. 288, 249 US 605, 63 L.Ed.798: "Combination claims are treated as an integer.", defendants kept *forcing* **non**-combination claims to be written on penalty of forced abandonment of the entire subject case [the penalty for being "non-responsive" per defendants' Rules]. Consequently, Applicants were cheated out of the Statutory scope of subject matter which they regard as their invention. Not only that, this defendant ALSO refused to accept Plaintiff/ Applicant's definitions (of "dexterous"). Plaintiff/ Applicant traverses all situations including the instant one, where examiners do NOT examine Applicants' inventions but rather choose to "examine" their own version of the inventions presented for consideration. Defendants committed multiple Rule violations. It damaged Plaintiff. Plaintiff demands remedy as set forth below.

80. If the Applicant for a patent cannot define the issues, and the Office and its personnel force definitions, and/or "species" upon Applicants, then very clearly, the Office is NOT examining Applicants' inventions, but it rather instead is examining examiner's inventions. Therefore, instant Applicant traverses "made-up" "issues" and "species" placed into the case as camouflage so to enable easier rejection (Para. 19 *supra*.) instead of following MPEP 707.02 (a), 707.07, 707.07 (d) and (g). Said action by defendants damaged Plaintiff. Plaintiff demands remedy as set forth below.

81. This case, too, exhibited rejecting on opinion instead of well-settled law. But it went farther than just that. While defendants/examiner here was continually demanding red ink sketches for fully canceled drawings, he further made continual fuzzy, unclear demands, and improperly demanded claim restricting to force Plaintiff/Applicants to attempt claims on "species" they did not invent; refused to allow Applicants to define; general incompetence in examining,

29

and the rest fully complained of hereinbelow.   Plaintiff thus demands that this Court make defendants follow the law and simultaneously recompense the Plaintiff for the defendants' past unlawful acts against him.   It damaged Plaintiff.   Plaintiff demands remedy as set forth below.

82.   If the Applicant for a patent cannot define the issues, and the Office and its personnel force definitions, and/or "species" upon Applicants, then very clearly, the Office is NOT examining Applicants' inventions, but it rather instead is examining examiner's inventions. The instant defendant examiner in case Serial No.  07/775,845 /// 08/065,687 quoted Regulations allowing him to restrict the case and define species in cases: 37 CFR 1.142, 146. This he used against Plaintiff so to IGNORE Plaintiff's precise statements of what Plaintiff considered to be the actual subject matter of his invention.   Regulation 146 states "Generic claims and claims restricted separately to each of more than one species" must be separated out.  Yet, INSTEAD of following the Regulation as demanded by Plaintiff, defendants examiner placed into the record a Rule suggesting that the **drawing** is to be used to ascertain the species of the case.  Thus, the time, effort and wealth of both sides was squandered by defendants in dragging out a case which, when defendants FINALLY did answer Plaintiff's *actual* invention, was resolved in a veritable *instant*.  Defendants must be required by this Court to examine the actual inventions presented for patenting before them and not make up inventions as they go along.  "Agencies shall take no actions, including the issuance of Regulations, based upon invalid provisions."  Ameron Inc. v U. S. Army Corps of Engineers, 607 F. Supp 962, 970; 787 F 2d 875, 885.  Plaintiff traverses and seeks recompense from the invalid provisions (oral, "understood," or otherwise) that caused defendants to disobey their own Rules and Regulations, and in the instant case **misuse** same to willfully deny Plaintiff 5th Amendment Substantive Due Process.  Said action by defendants damaged Plaintiff.  Plaintiff demands remedy as set forth below.

83.  Defendants in case Serial No.  07/775,845 /// 08/065,687 **flatly refused** to even consider the [combination] claims entered for examination due to defendants' contention that said claims were "functional" in nature.  This, of course, also violates defendants' Rules.

Specifically, defendants' instant actions violate M.P.E.P. 2173.05(g), found on page 2100-152, entitled: **Functional Limitations**. To quote the Rule: "Functional language does not, in and of itself, render a claim improper. *In re Swinehart,* 439 F2d 210, 169 USPQ 226 (CCPA 1971)." Said action by defendants damaged Plaintiff. Plaintiff demands remedy as set forth below.

84. Defendants in case Serial No. 07/775,845 *///* 08/065,687 flatly refused to *even consider* the claims entered for examination due to defendants' contention that said claims were "functional" in nature. This allowed defendants to so "restrict species" because, conveniently for defendants, defendants no longer had *any* of Plaintiff's's/Applicants' actual claims to consider! (See para. 19, *supra.*) Of course, in throwing out all Plaintiff's claims by declaring same to be functional instead of specific as to structure, such actions also violates defendants' Rules. Specifically, defendants' instant actions violate M.P.E.P. 2173.05(g), found on page 2100-152, entitled: **Functional Limitations**. And they FURTHER VIOLATE the Rules defining how to "restrict." which is supposed to be according to the wording of the claims. Defendants conveniently IGNORED Plaintiff's claims in their entirety! The instant case of **misuse** of Rules to willfully deny Plaintiff 5th Amendment Substantive Due Process is bitterly traversed. Said action, malfeasance, by defendants damaged Plaintiff. Plaintiff demands remedy as set forth below.

85. Further in violation of the provisions of BOTH 35 USC 103 *and* M.P.E.P. 706.02(j) found on page 700-16, 17, defendants did not "properly communicate the basis for" the rejections of instant paragraphs 83 and 84. Plaintiff repeatedly asked in writing and by telephone why they were functional and what made them functional - to which defendants refused to answer. Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

86. Defendants further violated M.P.E.P. 2173.01 entitled Claim Terminology where it plainly states: "Applicant may use functional language..." Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

87. Defendants further violated M.P.E.P. 2172 entitled "Subject Matter which Applicants Regard as Their Invention". This sets forth Rules guiding defendants' manner of rejecting. Defendants refused to even consider that which Plaintiff/Applicants set forth in writing as the

31

subject matter of their invention. Said subject matter was a combination of the drawn elements. And instead defendants *forced* "restriction" of Plaintiff/Applicants' invention to a NON-combination of only one out of the four elements Plaintiff had intended to combine. This action was based solely upon the appearance of the drawing. So, by ostensibly using other ones of the Office Rules to ignore Rule 2172 and ignore the written and spoken words of the inventors themselves which unambiguously set forth that COMBINATION claims and NO OTHERS solely make up the subject matter of the subject invention defendants succeeded in violating their own Rules. Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

88. Defendants further violated M.P.E.P. 706.02(j): "It is important for an examiner to properly communicate the basis for a rejection so that issues can be identified early and the applicant can be given fair opportunity to respond." Although Plaintiff precisely communicated that which he deemed the subject matter of his invention, defendants adamantly refused to accept said subject matter and demanded that Plaintiff instead only prosecute one of four of defendants' /examiner's **personal choice** of inventions. That does not constitute "fair opportunity." *Fair opportunity* comprises a discussion of that which the INVENTORS-only consider as the subject matter of their invention. The use of the Office Rules to force Plaintiff to "prosecute" a case that does *not* represent his invention but instead force him to prosecute a case involving one that the defendants deliberately chose --- one that does not remotely have bearing upon Plaintiff's actual invention as 3/4ths of his invention is demanded by force to be thrown out of the case (under pain of forced abandonment for being 'non-responsive' according to the Rules) --- so to willfully deny Plaintiff the *mere opportunity* to even have his actual subject matter *considered* by defendants represents a clear and precise definition of violation of Constitutional Substantive Due Process of Law. Malfeasance is another apt term. And that Fifth Amendment violation and/or misuse of written Rules led to a rejection by defendants of Plaintiff's patent. Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

89. Actions of defendants in case Serial No. 07/775,845 /// 08/065,687 were effectual only to the extent that same gave cursory "reasons" [nee mere excuses] for rejection but never

32

provided the required [by M.P.E.P. 706.02(j)] "written record [to] clearly explain the rationale for decisions made during prosecution of the application." Cf. defendants' requirement invoking "all". It was never explained. Plaintiff complained about the imprecise and entirely unclear word throughout the entire prosecution of the subject patent case. Yet in a massive display of malfeasance, defendants *adamantly* refused to explain. And *that* violation of written Rules led to another count of rejection by defendants of Plaintiff's patent. Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

90. Said actions further violated "examiner must provide evidence" {of functionality} according to M.P.E.P. 2144.03, page 2100-115, second col., mid. In not answering Plaintiff/ Applicant, the subject defendants examiner did not so follow the Rules. And that violation led to a rejection by defendants of Plaintiff's patent. Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

91. Defendants in **both** subject patent cases deliberately and willfully violated M.P.E.P. 2142 and failed in both cases to establish a legal *prima facie* case of obviousness. In both subject cases, defendants rejected "without explaining any one rejection with reasonable specificity;" which precedent should have "reversed as procedurally failing to establish a *prima facie* case of obviousness." Found on M.P.E.P. page 2100-109, first col., lower middle. And that multiple violation led to a rejection by defendants of Plaintiff's patent. Said action damaged Plaintiff. Plaintiff demands remedy as set forth below.

92. Plaintiff insists that promulgated law applies to all - including the government, its agencies, personnell, and employees that actually did the promulgating; that the instant defendants did not themselves follow their own law, rules, regulations; that the instant defendants violated Plaintiff's Constitutional Rights to Equal Treatment under the Law, Article 4, Clause 1 and the Ninth Amendment; that the instant defendants violated Plaintiff's Constitutional Rights to Due Process of Law, Fifth Amendment; that said violation damaged Plaintiff. Plaintiff has attempted, since 1991, to work within the patent system both via commissioner petitions and

33

patent appeal, and has been unable to acheive simple Justice.  Plaintiff demands this Court

grant remedy therefor as set forth immediately hereinbelow.

93.  WHEREFORE, Plaintiff demands this Court enter a judgement against defendants

United States Patent and Trademark Office and its employees listed, *supra.*, severally and

individually for compensatory and punitive damages, costs, professional Agent's and attorney's

fees, interest in cash and for such other and further relief as the Court deems just and proper.

The Court is reminded of the Constructive Legal Notice properly served on and acknowledged by

defendants - clearly noticing same that the instant suit would "sue for all the paid fees, plus the

appeal reinstation fee, plus 3,000 hours of professional time billed at $100 per hour plus triple

punitive damages for each violation listed."  Said total damages sought: $111.6 Million plus the

said fees.


PART 2

## GENERAL ALLEGATIONS


### THE INSTANT TIME-DEPENDANT ACTIONS FORCE IMMEDIATE FILING OF THIS CASE


2-1.  Another one of Plaintiff's Patent Applications, Serial No. 08/367,400 for a computer-

based investment security is instantly at stake.  An earlier examiner, not above named, was

willing to pass the subject case to issue but could not convince supervisory personnell (Hayes)

to do so.  Furthermore, each time supervisory personnell rejected said previous examiner's

arguments, they/she were NOT specific enough in their rejections to allow said previous

examiner to make specific and clear rejections enough to give Plaintiff/Applicant-for-Patent a

clear course to amend.  This lack of clear course is exactly what dragged out the prosecution

time in the instant case.  Thus, more than once, supervisory personnell were directly responsible

for that examiner violating MPEP 707.07 Clarity.  Now, a new examiner (Tkacs), operating under

NEW Office Policy regarding computer-based inventions is requiring much stricter detail than

34

was previously required.  Plaintiff, in attempting to meet with the defendants new examiner's new requirements, finds said examiner, with concurrence of supervisor, is not willing to allow Plaintiff's changes to be added to the case.  Changes made in complete accord with defendants examiner's requirements are not being allowed.

     2-2.  In the just-received Office Action, Paper No. 25, paragraph 6, page 9 of the subject case, the defendants examiner states:"the proposed amendments, particularly to the drawings, would introduce new matter into the disclosure and would be objected to if properly filed."  The Statutory Act, Office Rules and Regulations are very specific in that no new matter is allowed to be placed into already-filed cases, 35 USC 132.  The instant defendants examiner has so far been generally Constitutional in his Actions, has been precise in his rejections and even though he has problems with Plaintiff's last response, his present rejections are specific enough and clear enough that Plaintiff/Applicant can fix them to the satisfaction of the law and defendants.

     2-3.  The problem and indeed the cause of action herewith, is that Plaintiff and defendants disagree on what constitutes New Matter.  The supposed "new matter" to which defendants alludes is the detail that was not originally necessary to be placed into the case so to satisfy the previous examiner (not above named).  The subject case was filed under the non-specific rules about computers that the defendants were operating under at the time of filing. Said previous examiner comiserated with Plaintiff on the telephone, also more than once, saying that he himself would like specific direction and was not getting same from supervisors.  An exact quote:  "I'm not a signing examiner.  But if I was, I would allow it."

     2-4.  The instant defendants examiner now states that the flow chart Plaintiff entered and was accepted by the original examiner is, all of a sudden, not good enough.  Please be aware that a long prosecution already past has found no fault with the drawing.  Continued prosecution now requires taking on the detailed pure symbology of computer flow charts.  Defendants examiner also demanded further explanation of the wording of the specification, such as the generic word "computer."

2-5.  Plaintiff/Applicant re-did the flow chart as desired by defendants. A one-page flow chart expanded into three pages.  Plaintiff is making a valid attempt to advance the case to issue.  Nothing was added that was not already an inherent part of the original subject case.

2-6.  The brand-new specification problems included new demands for greater details. Plaintiff complied.  The details added include such things as:  specifically listing a computer's processor instead of the original listing of "computer".  Paper No. 25's listed "problems" with the wording of the Claims are fixable by Plaintiff.  But none of this can happen if Plaintiff's changes are not accepted by defendants.

2-7. Defendants' policy on new matter is as follows:  New matter is defined as any additional details, structure, or other information on the invention, which was not present or **implicitly suggested** in the originally filed application.  While material can be added to clarify or correct material already present in the originally filed application, new ideas, embodiments, or other descriptions of the invention which were not present, **inherent** or **implicitly suggested** in the originally filed application are considered as new matter, and can not be entered into the application.

2-8.  The Court is here being asked to define the meaning of "inherent" and "implicitly suggested."

2-9.  While the details added in response to defendants request were indeed not actually present in the original application as originally filed, NOTHING WAS ADDED BY PLAINTIFF that was not both "inherent" and also "implicitly suggested" by the material already in the case. While defendants are now clear in their rejections as to the claims -- and Plaintiff can fix these problems, defendants Paper No. 25 in the subject case is complaining about the word "processor" and more generally contends that the original specification has no specific computer embodiment (this in the face of a specific original flow chart showing exactly what the specific computer embodiment is being asked to do).  It also says (para. 6) that the "invention broadly reads on any and every computer implementation of the disclosed financial system" as if that was a bad, re: rejectable, thing.  The **purpose** of ALL patents is to <u>broadly cover</u> <u>the subject</u>
36

matter of the invention. The Court is demanded to reconfirm this to defendants. If usurpers can go around the details of a patent and do the same thing, operate the disclosed financial system in a different computer system, of what worth is having a patent in the first place?

2-10. Plaintiff specifically entered the application **exactly** so to cover "every computer implementation of the disclosed financial system." Plaintiff did not spend his money and significant amount of time to get a detailed patent that can be gone around by others unwilling to pay royalties to Plaintiff. Furthermore, the purpose of the U. S. Patent Office is to empower the Art. 1, Sec. 8, Cl. 8 Constitutional need "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Defendants are hereby violating this Constitutional provision if they do not allow a broad patent to *fully* Reserve Plaintiff's 'exclusive Right to' "implementation of the disclosed financial system." Defendants have NOT come up with ANY prior art reading on the subject invention. And this is over a long period of time. It, therefore, deserves **broad** coverage. To deny same, especially upon mere examiner **Opinion,** is a Due Process Violation of the Fifth Amendment to the U. S. Constitution. The Court is here being asked to prevent same.

2-11. Coverage of the scope of any and all Letters Patent should be limited solely by the amount and scope of already-existing prior art that the Patent Office can discover and otherwise bring to light. It should NEVER be limited by examiner OPINION. This Court is asked to **stay all proceedings in the subject case, stay the Final Rejection and stop the flow of statutory time** until, at least and at minimum, a meeting of the minds between Plaintiff and Defendants can be reached.

2-12. There is no meeting of the minds extant at this time. There is a VERY REAL PROBABLITY that **Plaintiff will NOT receive Due Process** should examiner OPINION be allowed to govern this, and all other, cases. This Court is asked to PREVENT an additional Due Process violation beyond the multiple Clarity violations already committed by defendants in the subject case.

2-13.  Para. 7 of defendants' Action, Paper No. 25, of the subject case complains of "processing means" not being present in the original application, re: not inherent in the word "computer" and thereby also completely disregarding the original flow chart detailing how the processing means works.  Furthermore, the paragraph 7 goes on to complain that "to program a computer to include 'legal means...' would require undue experimentation because it is not readily apparent to a person of ordinary skill in the art how to program a computer as such."  Yet, the original specification as originally filed, specifically pointed out Statute and it is a matter of sheer simplicity to program the computer to cite the given statute in the paperwork necessary to promulgate the security.  All this is fully implicit in the original flow chart, as is the paperwork required to promulgate the security.  And the Statute is fully disclosed with legal cites.  The defendants examiner instantly simply misread the specification (and/or deliberately ignored the cites).  This has happened before in the instant case more than once.  As soon as same was pointed out to original examiner, the misreading was immediately understood by original examiner and the faulty requirement rescinded.

2-14.  Paper No. 25, Para. 8: "Since the claims are not supported by the disclosure, and are indefinite so as to not enable proper determination of art issues, no further consideration with pertinent prior art is warranted."  Thus defendants examiner closes off prosecution of the entire case because he does not read the specification and its changes correctly.  This is a violation of Constitutional Due Process.

2-15.  Defendants examiner says that Plaintiff's changes placed into Amendment are not implicit in the specification as originally filed thereby giving "reasons" for rejecting in accord with defendants Rules but in total **disregard** of those self-same Rules, specifically "examiner must provide evidence" {of lack of implicity and/or inherency} according to M.P.E.P. 2144.03, page 2100-115, second col., mid., **"examiner must provide a convincing line of reasoning."** Nor has defendants examiner followed M.P.E.P. 706.02(j): to provide a "written record [to] clearly explain the rationale for decisions made during prosecution of the application."  Further in violation of the provisions of  BOTH 35 USC 103 *and* M.P.E.P. 706.02(j) found on page 700-16,

38

17, defendants did not "properly communicate the basis for" the rejections.  To put it simply, defendants examiner himself is not detailed enough to overcome Plaintiff's charge of the Improper Use of Opinion to reject.  He fails to impart a chain of reasoning to define WHY he feels that the amendment is neither implicit nor inherent in the original wording.  He improperly, simply says it is.  It is his OPINION that it is.  To Plaintiff, it is patently obvious that the original and the amendment are all one and the same.  And after 25 Papers in the subject case, Plaintiff's reasoning should be evident.  Defendants examiner gave "reasons" for rejecting as "lack of inherency" but failed to "give a convincing line of reasoning" for making the actual decision that the amendment contains supposed lack of inherency.  This consitutes a Due Process Violation against Plaintiff.

2-16.  Plaintiff *will* suffer **irreparable harm** if the above is allowed to continue unabated as the subject case is now under <u>Final Rejection</u> leading to *forced abandonment* under defendants' Rules.

2-17.  There is simply not enough time to argue with defendants examiner; as will be seen in Part 3 herein, even a simple argument can lead to total loss of the application.  This Court must stay all proceedings including the running of time and the Final Rejection itself and decide on the precise meaning of the words "inherent" and "implicit" and must require defendants to fully understand the applications before acting thereupon and reject **only** upon complete explanation of line of reasoning leading to the final decision.

2-18.  WHEREFORE, the instant case is presently Finally Rejected and thus answer is required in a time period far shorter than argument with defendants will allow, the Court is hereby asked to grant Plaintiff **Injunction** and immediately **Stay the Final Rejection**, **stop** the running of the time-until-forced-abandonment so to give the Court time to hear and decide upon the question of whether Plaintiff/Applicant has the Right to add inherent subject matter details to the subject case and decide upon the questions so brought up herein.  Demand is made of the Court to rule in Plaintiff's favor and that inherent subject matter may be so added; which is already a part of defendants' policy.  The Court is demanded to rule that Plaintiff's subject matter is indeed

inherent to the subject matter Plaintiff originally entered.  The Court is demanded to grant Plaintiff monetary remedy for past Fifth Amendment Due Process Violations, per Notice served upon defendants, of $6 Million for five actual Due Process Violations already committed by defendants.

PART 3:

3-1.  This is a description of a simple argument with defendants which resulted, at no fault of Plaintiff, in forced abandonment, total loss, of Plaintiff's pending application.  The Court is asked to rule on the Constitutional Issue of whether Plaintiff / Applicant-for-Patent has the Constitutional Right to recover from errors of a governmental agency, specifically the United States Patent and Trademark Office.  Said errors were made in Plaintiff's Case No. 08/059,301.

3-2.  Time was run out by defendants (Brenda Turner) in Paper No. 10 of the subject case, by making requirements for extra payment of $11.00 for an extra (beyond the count of 20) presence of a claim, wherein such claim did not in reality exist.  Therein lies defendants' error.  This constitutes a Constitutional Fifth Amendment Due Process Violation by defendants against Plaintiff.  Defendants violated their own Rules re: claim counting and charging therefor.

3-3.  Defendant Turner's Paper No. 10 of the subject application first demanded an $11.00 fee due for an additional claim - and concurrently! - in the very same paper! - also offered return of an $11.00 excess payment!  Defendants' error is entirely evident here.  Defendants' error lies in improper claim counting.

3-4.  Paper No. 10 made no sense and Plaintiff/Applicant immediately demanded written clarification with rechecking of the Office calculations for the claims.  Same was done, re-demanded by the Office; and payment was immediately and subsequently made by Plaintiff/Applicant.

3-5.  Now, even AFTER payment had been made, the application file itself was NOT returned by defendants to the case examiner (not above named).  Applicant knows this, because he called the examiner a minimum of two and a maximum of three times in order to discuss the
40

case and the File Wrapper was not returned to the examining group (by Defendant Turner) each time he called.  Office Policy is to handle all applications after Final Rejection on an accelerated pace.  Thus, this Rule was violated, and said Rule violation translates to a Due Process violation.  When it finally was returned for examination, there was just enough statutory time for the examiner to make an answer and get it in the mail.  When Applicant finally received it, time elapsed since final rejection was 6-3/4 months.  Therefore, no Continuation-In-Part Application, C.I.P., was then statutorily possible.

3-6.  This is an extremely simple argument.  Does or does not Applcant owe money?  The number of claims in the case precisely determines.  Yet, it took ALL of the statutory time to come to a final determination of such a simple subject.  However, MOST of the wasted time was defendants refusal to return said File Wrapper to the examiner AFTER PAYMENT WAS DULY MADE to defendants.  There was quite enough time remaining after payment of the fee, for examiner's answer and the filing of a C.I.P.  Applicant was not at fault for the running out of time.  Thus, in addition to the miscount, the apparent mis-filing and/or the deliberate and obvious failure of defendants to return Plaintiff's File Wrapper to the examining group while same was under an extremely limiting time passage caused an additional Due Process Violation by defendants against Plaintiff by wantonly preventing Plaintiff from knowing the outcome of his actions until AFTER statutory limits of time had past.  Plaintiff claims the procedural right to know examiner's answer to his Amendment After Final Rejection with enough time to either Appeal or file a Continuation, or C. I. P., see para 23, *supra*.  Swift handoff of any such case is so important that defendants have established Box AF specifically to expedite such cases.  Defendant Turner denied Plaintiff such swift consideration.  See also para 26, *supra*.

3-7.  Where was the Defendant's Office error specifically located?  It occurred in the last Amendment Plaintiff entered in the subject case filed thus: "[24) The system of Claim 23 wherein]."  As anyone familiar with Office claim practice knows,  Claim 24 was CANCELED by including the numeral "24" within brackets [].  In defendant's own Rules, all claim language set within brackets "[]" is cancelled subject matter.  And thus, the remaining subject matter of claims

41

23 and 24 became placed together into one claim. Now, it would be called Claim 23 Amended. Applicant did this for the sole reason so as NOT to have to pay any additional fees. Plaintiff/Applicant was in severe financial straights at the time and went to great lengths to keep costs DOWN. Yet, Ms. Turner COUNTED CLAIM 24 AS THE 21st CLAIM!!! Thus did Ms. Turner then demand additional payment for a claim that did not exist and consequently, in the required answering of Office demands, did the Office Itself run out the statutory time through NO FAULT WHATSOEVER of Applicant.

3-8. Demand by Plaintiff for rechecks by defendants succeeded only in evincing payment of the demanded fee and then forced abandonment of said case before Plaintiff had the opportunity to even file an answering Continuation-In-Part. Thus his presently filed new case based upon the same subject matter and his original subject case filed in 1993 are **not** connected and he does not have Official proof of early conception. Said proof is a simple statement in the new case that said new case relys upon the subject matter of said subject earlier case, now abandoned.

3-9. Defendants were kind enough to send Plaintiff some forms requiring fees so to file to help correct the situation, but Plaintiff has been below poverty level for a significant number of years and at the time the forms were proferred, entirely unable to pay the fees.

3-10. Justice should not be bought. It, by Constitutional Right, should be available to all.

3-11. Justice in the subject case demands Plaintiff's right of early conception date be honored. Conception dates of inventions are of supreme importance. The earliest conception date prevails in an inventive controversy. Thus Plaintiff demands his Ninth Amendment Constitutional Right for Article 1, Section 8, Clause 8 monopoly to exclude others from making and using his invention. Said Rights would be jeopardized if Plaintiff cannot claim his earlier conception date in his new case. Defendants Rules provide short time limits to carry out answers to defendants' Actions. And when defendants make errors, especially case-killing errors, said Constitutional Rights are in supreme jeopardy. Plaintiff demands remedy.

42

3-12.  WHEREFORE, Plaintiff demands this Court grant that the two subject cases of Part 3 be connected so that Plaintiff may exercise his Right to prior conception dates even though defendants ran out the time for action and originally prevented same under defendants' Rules.  The Court is further demanded to grant Plaintiff monetary remedy for the two plainly evident Fifth Amendment Due Process Violations, per Notice to defendants, of $2.4 Million for the actual Due Process Violations of Office Rules regarding Claim Counting and malfeasance regarding returning File Wrappers to examining groups in a timely manner especially under a Final Rejection; said actions were clearly committed by defendants.  The Court may also add the disputed $11.00 fee to the total damages awarded.

Total Damages Demanded as Remedy for all three Parts: $120 Million plus fees, etc.

Thank you.

*In propria persona, sui juris,*

*All Rights Reserved,  without prejudice*

By _George A. Teacherson_

George A. Teacherson, Plaintiff, Pro Per.

c/o Box 762

Palm Beach, Fla.  33480

(561) 966 - 9968

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

# PLEASE REFER TO COURT FILE